IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Case No. 3:20-cr-124 |
| v. | ) | |
| | ) | SENTENCING MEMORANDUM |
| TRAVIS LEE MCKIE, | ) | |
| | ) | |
| Defendant. | ) | |

The government, by and through the undersigned Assistant United States Attorney, files this sentencing memorandum in anticipation of the sentencing hearing set for December 22, 2021 at 1:00 p.m.

## TABLE OF CONTENTS

I.    **BACKGROUND** ..........................................................................2

II.   **SENTENCING CALCULATION** ...........................................2

III.  **ISSUES TO BE RESOLVED** ..................................................3

    1.    The four-level enhancement for material portraying sadistic, masochistic, or violent conduct under USSG § 2G2.1(b)(4)(A) was appropriately applied.................................................................3

    2.    The two-level enhancement for obstruction of justice under USSG § 3C1.1 was appropriately applied, as was the removal of Defendant's acceptance of responsibility under USSG § 3E1.1 .....4

    3.    Defendant is a repeat and dangerous sex offender under USSG § 4B1.5(b)(1)........................................................................................9

    4.    The special condition of supervised release prohibiting accessing the internet without prior USPO approval is appropriate and constitutional ...........................................................................10

IV.   **GOVERNMENT'S RECOMMENDATION** ...........................................12

## I.   BACKGROUND

An Indictment was filed on November 4, 2020, in the Southern District of Iowa, charging Travis Lee McKie (Defendant) with two counts of Production of Child Pornography, in violation of 18 U.S.C. §§ 2251(a) and 2251(e). A Notice of Forfeiture was also filed under 18 U.S.C. § 2253. (PSR ¶ 1.)

On August 16, 2021, Defendant pleaded guilty to Count One of the Indictment. On September 1, 2021, the Court accepted Defendant's plea and adjudicated him guilty. (PSR ¶ 2.) The government agreed to dismiss Count Two at the time of sentencing (PSR 3.)

## II.   SENTENCING CALCULATION

In the presentence report paragraphs 39-52 and 119, Defendant's guideline range was calculated as follows:

| | |
|---|---|
| Base Offense Level USSG § 2G2.1(a) | 32 |
| Minor Between the Ages of 12-16 USSG § 2G2.1(b)(1)(B) | +2 |
| Commission of Sexual Act/Contact USSG § 2G2.1(b)(2)(A) | +2 |
| Sadism/Masochism USSG § 2G2.1(b)(4)(A) | +4 |
| Use of a Computer USSG § 2G2.1(b)(6)(B)(ii) | +2 |
| Obstruction of Justice USSG § 3C1.1 | +2 |
| Repeat and Dangerous Sex Offender USSG § 4B1.5(b)(1) | +5 |

| | |
|---|---|
| Total Offense Level | 49 |
| Adjusted Offense Level<br>USSG § 5A, n.2 | **43** |
| Criminal History Category | IV |
| Guideline Sentencing Range | Life |
| Adjusted Guideline Range<br>USSG § 5G1.1(a) | 360 months |

## III.   ISSUES TO BE RESOLVED

1.   **The four-level enhancement for material portraying sadistic, masochistic, or violent conduct under USSG § 2G2.1(b)(4)(A) was appropriately applied.**

A defendant receives a four-level increase if "the offense involves material that portrays . . . sadistic or masochistic conduct or other depictions of violence." USSG § 2G2.1(b)(4)(A). The guidelines do not define the terms "sadistic" or "masochistic." The Eighth Circuit has held that the definition of "violence" is the "exertion of any physical force so as to injure or abuse." *United States v. Parker*, 267 F.3d 839, 847 (8th Cir. 2001). Thus, "[g]iven the plain meaning of 'violence,' it is difficult to imagine that the sexual penetration with a foreign object of a minor female would not qualify as 'violence' even if self-inflicted." *Id.*; *see also United States v. Starr*, 533 F.3d 985, 1001 (8th Cir. 2008); *United States v. Schenkenburger*, 788 F. App'x 1044, 1044-45 (8th Cir. 2020) (unpublished).

Here, Defendant possessed numerous images depicting MV1 with a blue/green object inserted into her anus. (PSR ¶¶ 14, 22.) Furthermore, Defendant and MV1 engaged in chats in which they "role played" aspects of BDSM. For instance,

3

Defendant referred to MV1 as "slave" and MV1 referred to him as "Master."  *Id.* ¶¶ 14-15.   Therefore, because the offense involved sadistic, masochistic, or violent conduct, the enhancement was appropriately applied.

**2.   The two-level enhancement for obstruction of justice under USSG § 3C1.1 was appropriately applied, as was the removal of Defendant's acceptance of responsibility under USSG § 3E1.1.**

First, United States Sentencing Guideline § 3C1.1 provides:

> If (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation . . . of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct . . ., increase the offense level by 2 levels.

This includes "escaping or attempting to escape from custody before trial or sentencing."  *Id.*, n.4(E).  In order to attempt to commit an offense, a defendant must take a substantial step toward the commission of the offense, which occurs "when he takes actions 'necessary to the consummation of the crime that were of such a nature that a reasonable observer, viewing the actions in context could conclude that the actions were undertaken in accordance with a design to commit the actual offense." *United States v. Tyerman*, 701 F.3d 552, 566 (8th Cir. 2012).

Here, Defendant attempted to escape from the custody of the U.S. Marshals. The Eighth Circuit has held that an attempted escape is grounds for an obstruction of justice sentencing enhancement.  *Id.*  There, U.S. Marshals discovered two homemade handcuff keys in Tyerman's possession and fellow inmates reported that Tyerman used the law library, which was not under video surveillance, to practice using them.  *Id.* at 558.  The district court imposed an obstruction of justice

enhancement and the Eighth Circuit affirmed, stating that Tyerman had taken a substantial step toward committing the escape, as "[a] reasonable observer would view the creation of handcuff keys (and practice using them) as 'in accordance with a design' to escape." *Id.* at 566; *see also United States v. Miller*, 943 F.2d 858, 860 (8th Cir. 1991) (affirming application of obstruction of justice for attempted escape when, during transport, inmate pushed on the handle of emergency exit door and when observed, stated: "I had nothing to lose by trying").

Here, in April 2021, a fellow inmate at the Muscatine County Jail (MCJ) reported that Defendant was in possession of a handcuff key and was planning to escape during transport for his next court appearance. (PSR ¶ 33; Ex. 1.) An interview was conducted between that inmate, his attorney, and the U.S. Marshals and the inmate reported having been in the same unit as Defendant. *Id.* The inmate reported Defendant had asked him questions about the security of the federal courthouse and details about the transport of inmates to court, including the route the transport van takes between the jail and the courthouse. *Id.* ¶ 34; Ex. 1. Defendant told the inmate that he procured a handcuff key while in South Carolina awaiting transport to Iowa, having devised a plan with his "people" in South Carolina to assist in his escape. *Id.* Defendant admitted he hid the handcuff key in his bunk, which he showed the inmate. *Id.*

On May 6, 2021, MCJ staff searched Defendant's belongings as they prepared to book him out to move him to the Scott County Jail. *Id.* ¶ 35; Ex. 1. Corrections officers used metal detectors on Defendant's belongings, and a bottle of baby powder

set off an alert. *Id.* Officers searched the baby powder and located a handcuff key wrapped in white toilet paper. *Id.*; Ex. 2.

Defendant objects to "the characterization" of these facts, claiming that he did not procure the handcuff key in South Carolina, but obtained it at the MCJ and claims he did not coordinate with anyone in South Carolina to facilitate his escape. *Id.* p. 46. Defendant does not object to the fact that he had an actual handcuff key in his possession or that the inmate did not report what is contained in the PSR.

What is more, however, is that Defendant attempted to escape from prison in South Carolina. Ex. 3; PSR ¶ 67. Thus, when someone with a prior escape attempt, who, according to the other inmate, discussed security at the jail, courthouse, and transport route, is found in possession of a handcuff key, that amounts to a substantial step toward the commission of the crime. But even if Defendant did not have a plan with his "people" in South Carolina, and even if his comments to the inmate about security were exaggerated, viewing his actions in context and given the Eighth Circuit's holding in *Tyerman*, a reasonable observer could conclude that Defendant undertook the action of acquiring the handcuff key to commit the offense of escape from custody. Therefore, the Court should apply the two-level enhancement for obstruction of justice.

Next, United States Sentencing Guideline § 3E1.1 provides for a three-level adjustment for those who timely accept responsibility for their offense. But "[c]onduct resulting in an enhancement under § 3C1.1 ordinarily indicates that the defendant

has not accepted responsibility for his criminal conduct. There may, however, be extraordinary cases in which adjustments . . . may apply." USSG § 3E1.1, n.4.

First, a defendant carries the burden to establish that he is entitled to an adjustment for acceptance of responsibility. *United States v. Honken*, 184 F.3d 961, 968 (8th Cir. 1999). Defendant cannot do so in this case.

*Honken* is the Eighth Circuit's watershed case for what an "extraordinary case" means under this guideline. District courts must consider the totality of a defendant's circumstances. *Id.* Some of those circumstances are whether the obstructive conduct was an isolated incident, whether a defendant voluntarily ceased his obstructive conduct, or whether the obstructive conduct was involuntarily ceased by law enforcement. *Id.* Importantly, district courts should consider whether a defendant "admitted and recanted his obstructive conduct, or whether he denied obstruction of justice at sentencing." *Id.*

It is obvious, by the court's repeated insistence, that what district courts cannot do is find that a timely guilty plea and cessation of obstructive conduct is sufficient for an acceptance of responsibility adjustment. *Id.* at 969. The court noted that "[v]irtually every defendant who receives an acceptance of responsibility adjustment enters a plea of guilty. . . . And virtually every defendant who receives an acceptance of responsibility adjustment commits no obstruction of justice between the guilty plea and sentencing hearing, for post-plea obstructive conduct would almost certainly be disqualifying." *Id.* at 970. Thus, there must be more to warrant a finding of an "extraordinary case."

The court attempted to define "extraordinary" by looking to other usages of the word in the guidelines. *Id.* at 969-70. Ultimately, it concluded that an "extraordinary case" "means a situation that is <u>extremely rare and highly exceptional</u>." *Id.* at 970 (emphasis added).

In *United States v. Allee*, the Eighth Circuit found that a defendant's escape attempt precluded him from receiving a reduction for acceptance of responsibility because his conduct amounted to obstruction of justice and nothing about his case rendered it "extraordinary." 282 F.3d 997, 1001-02 (8th Cir. 2002); *see also United States v. Nichols*, 833 Fed. App'x 657, 657-58 (8th Cir. 2021) (unpublished) (affirming denial of acceptance of responsibility for defendant who absconded from halfway house).

Likewise, Defendant's case is not the "extraordinary case" where he is entitled to a reduction for acceptance of responsibility. Defendant acquired a handcuff key, either in South Carolina or at the MCJ, and secreted it for future use. He did not cease his obstructive behavior himself, rather the U.S. Marshals involuntarily ceased it by having him moved to a new facility, requiring him and his belongings to be thoroughly searched, during which the handcuff key was located.

Defendant has also not admitted his obstructive conduct. While he admits he possessed the handcuff key, it would be difficult not to. He has otherwise denied having a plan to use it, which flies in the face of common sense, even for someone without a prior escape attempt. There is no reason to possess a handcuff key while incarcerated if one does not have a plan to use it.

Consequently, nothing about Defendant's case is extremely rare or highly exceptional, and, as such, it is not one of the "extraordinary cases" in which he is entitled to a three-level adjustment for acceptance of responsibility despite having received an enhancement for obstruction of justice.   Therefore, Defendant should receive a two-level enhancement for obstruction of justice and should not receive a three-level adjustment for acceptance of responsibility.

### 3.   Defendant is a repeat and dangerous sex offender under USSG § 4B1.5(b)(1).

Under USSG § 4B1.5(b)(1), a defendant is subject to a five-level increase if the "instant offense of conviction is a covered sex crime . . . and the defendant engaged in a pattern or activity involving prohibited sexual conduct."  A "covered sex crime" includes Production of Child Pornography. *Id.*, n.2.  "[T]he defendant engaged in a pattern of activity involving prohibited sexual conduct if on at least two separate occasions, the defendant engaged in prohibited sexual conduct with a minor."  *Id.*, n.4(B)(i).  "Prohibited sexual conduct" means "the production of child pornography." *Id.*, n. 4(A).  An "occasion" of prohibited sexual conduct may have occurred outside of the dates of offense of conviction and need not have resulted in a conviction.  *Id.*, n.4(B)(ii).

Here, Defendant persuaded or induced MV1 to send him sexually explicit images and videos of herself, constituting the offense of Production of Child Pornography, on more than one occasion in both November 2019 and December 2019. In Defendant's Google account, he had folders set up in MV1's name and dates that contained images of MV1: "Kimmi," "2019-11-22," "2019-11-23," "2019-11-25," and

"2019-12-03." (PSR ¶ 22.)  One image in the "Kimmi" folder depicts MV1 nude, bent over on her knees, showing her buttocks, with a blue/green plastic object inserted into her anus with her right hand spreading her vagina open. *Id.* One image in the "2019-11-22" folder depicts a close-up of MV1's vagina as she lies on her back and spreads her vagina open with her fingers and has a blue/green plastic object inserted into her anus. *Id.* A video in the "2019-11-25" folder depicts MV1 masturbating and shows her vagina up close with a blue plastic object inserted inside as she rubs her genital area with her fingers. *Id.*

Furthermore, on Facebook, Defendant instructed MV1 what images or videos to send, what poses to strike, what actions to take, and how long the videos needed to last. The first image MV1 sent Defendant on Facebook depicting child pornography was on December 1, 2019 and the last image depicting child pornography that MV1 sent him was on December 9, 2019.

Therefore, Defendant caused MV1 to produce child pornography on more than one occasion in November and December 2019, which constitutes a pattern of activity involving prohibited sexual conduct and the Court should apply the five-level enhancement.

### 4. The special condition of supervised release prohibiting access to the internet without prior USPO approval is appropriate and constitutional.

Defendant objected to the special condition prohibiting his accessing the internet without prior USPO approval as violative of the U.S. Supreme Court's

decision in *Packingham v. North Carolina*, 137 S. Ct. 1730 (2017).   (PSR p. 47.) Defendant's objection is misplaced.

The district court has wide discretion in imposing special conditions of supervised release, so long as they are related to the sentencing factors and do not involve a greater "deprivation of liberty than is reasonably necessary." *United States v. Perrin*, 926 F.3d 1044, 1047 (8th Cir. 2019).[1]  Perrin challenged the same special condition under the same theory as Defendant. *Id.* at 1047-48.  The Eighth Circuit distinguished *Packingham*, which did not involve contact with a minor on the internet, it did not involve a prohibition after the completion of a defendant's sentence, and it did not involve a complete ban on access to the internet.  *Id.* at 1048-49.  In *Perrin*, the defendant used the internet to contact a minor for sexually explicit purposes; the ban on accessing the internet was a condition of supervised release, which was part of Perrin's sentence; and it was not a complete ban because Perrin could access the internet with prior USPO approval.  *Id.*  Finally, the Court concluded "the special condition at issue does not involve a greater deprivation of liberty than is reasonably necessary." *Id.* at 1050.

The same circumstances are present in Defendant's case.  He used the internet, specifically Kik and Facebook, to contact a 15-year-old girl and request sexually explicit images and videos of her, as well as engage in sexually explicit chats with her.  The special condition at issue is not a complete ban on Defendant's ability to access the internet, he need only obtain prior USPO approval.  Therefore, the special

---

[1] Internal citations and quotations omitted, unless otherwise noted.

condition does not violate *Packingham* and the Eighth Circuit has already found the condition is not violative of the First Amendment.

## IV.   GOVERNMENT'S RECOMMENDATION

The sentencing statutes inform this Court that it must impose a sentence sufficient, but not greater than necessary, to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of Defendant; and to provide Defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a)(2).  The Court, in determining the particular sentence to be imposed, shall also consider the nature and circumstances of the offense and the history and characteristics of Defendant. 18 U.S.C. § 3553(a)(1). The sentence must "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

When fashioning the appropriate sentence in this case, the Court should consider the nature and circumstances of the offense, which are incredibly serious. Defendant committed this offense while incarcerated in the South Carolina Department of Corrections.  (PSR ¶¶ 67-68.)  He had been so incarcerated since 2007. *Id.*  While incarcerated, Defendant obtained a smart phone and used it to access the internet and set up a Google account, utilizing Google Photos.  *Id.* ¶¶ 20-30.  Using that smart phone, Defendant, a 39-year-old, contacted a 15-year-old female on social media and requested numerous graphic, sexually explicit images and videos of her.

12

Defendant engaged in BDSM chats with her, calling her numerous derogatory names, such as "slave" and "slut" and requiring her to call him "Master."

This conduct began on Kik by at least November 18, 2019 and continued on Facebook until approximately December 9, 2019.  Defendant and MV1 sent hundreds of messages to one another during this time.  On Kik, MV1 sent Defendant at least 80 media files (images and videos) and in his Google account, which includes images and videos from Facebook, Defendant possessed 38 images and 17 videos MV1 sent him.  Defendant, in turn, sent MV1 sexually explicit images of himself.  *Id.* ¶ 25.

Any production of child pornography offense is necessarily serious.  One involving the kind of language and imagery involved in this case, is even more so.  But the fact that Defendant committed this offense while incarcerated has rarely, if ever, been seen before.  The Court cannot even incarcerate Defendant to ensure the safety of the community and minor females in this country.

The Court should also consider Defendant's history and characteristics.  First, the cell phone prison officials located in Defendant's possession in June 2020 was not the only contraband cell phone Defendant possessed during his 12-year incarceration.  *See* Ex. 2; PSR ¶ 67.  He has a long history of illicitly possessing cell phones.

Second, Defendant's criminal history dates to 14 years old.  (PSR ¶ 57.)  His first adult conviction came at age 15.  *Id.* ¶ 60.  Defendant also has some history of sex offenses, first receiving a disciplinary violation for possessing pornography and second, a conviction for Solicitation of Prostitution.  *See* PSR ¶¶ 62, 64.

13

Moreover, he has been unsuccessful both while incarcerated and while on supervision: failing to obey directives, threatening or assaulting other inmates and employees, and possessing weapons. *Id.* ¶¶ 62, 67.

Defendant's criminal history also involves violent behavior: Domestic Violence, Resisting Arrest, and Assault and Battery with Intent to Kill. *Id.* ¶¶ 63, 66-68. His Resisting Arrest conviction involved attempting to strike a squad car with his vehicle and his Assault and Battery with Intent to Kill involved him shooting two people. *Id.* ¶ 66, Ex. 4.

Therefore, after considering all the sentencing factors, including the need to protect the public and the victim and deterrence to future criminal conduct, the government respectfully requests the Court impose a guideline sentence.

Respectfully submitted,

Richard D. Westphal
United States Attorney


By:  */s/ Torrie J. Schneider*
     Torrie J. Schneider
     Assistant United States Attorney
     U.S. Courthouse
     131 E. Fourth Street, Suite 310
     Davenport, Iowa 52801
     Tel: (563) 449-5432
     Email: torrie.schneider@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on December 16, 2021,
I electronically filed the foregoing with
the Clerk of Court using the CM ECF system.

UNITED STATES ATTORNEY

By:  */s/ Torrie J. Schneider*
     Torrie J. Schneider